IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 19-cv-01662-CMA-KLM

THE INTEGRATED ASSOCIATES OF DENVER, INC., and
THE INTEGRATED ASSOCIATES, INC.,

     Petitioners,

v.

RYAN B. POPE,

     Respondent.

## ORDER

This Matter is before the Court on Petitioners' Motion for Reconsideration (Doc. # 39) and Respondent's Motion for Award of Attorney Fees (Doc. # 40). For the following reasons, Petitioners' Motion for Reconsideration is granted to the extent it requests clarification as to whom the fee award applies. The Motion is denied to the extent it seeks to vacate the attorney fee award against Petitioners' counsel. Respondent's Motion for Award of Attorney fees is granted.

### I.  BACKGROUND

This is essentially an appeal of an arbitration order. Petitioner, The Integrated Associates, Inc. ("TIA"), is a California-based recruiting and staffing agency.[1] (Doc. # 13, p. 2). Respondent, Ryan Pope, was the regional director of TIA's Denver office.

---

[1] For purposes of this Order, Petitioners are referred to collectively as "TIA" or "Petitioner."

(Doc. # 13, p. 2). After Pope was fired in 2016, he sued TIA in Colorado state court, alleging, among other things, wrongful termination and breach of contract. (*See* Case No. 1:16-cv-02588-JLK (D. Colo.); *see also* Doc. # 13).

TIA removed the action to federal court and moved to compel arbitration. *Pope v. Integrated Associates of Denver, Inc.*, No. 1:16-cv-02588-JLK, 2017 WL 4857407 (D. Colo., April 21, 2017). Judge Kane granted the motion to compel arbitration, (1:16-cv-02588-JLK, Doc. # 25), and an arbitrator eventually awarded Pope roughly $145,000 in damages. (Doc. # 29-1, p. 19).

TIA then moved to vacate the arbitration award, arguing that the arbitrator had committed several legal errors during the arbitration. (Doc. # 13). Pope responded that TIA had failed to identify any legitimate basis for overturning the arbitration award, and he requested fees incurred in defending TIA's Motion to Vacate pursuant to 28 U.S.C. § 1927. (Doc. # 29). This Court denied the motion to vacate in a written order and granted Pope's request for attorney fees. (Doc. # 38). The Court directed Pope to file a separate motion for attorney fees specifying the amount of fees he was seeking. (Doc. # 38).

TIA now asks the Court to reconsider its decision to award fees, (Doc. # 39), and Pope requests a fee award in the amount of $20,511.50. (Docs. ## 40, 53).

## II. ANALYSIS

### A. MOTION FOR RECONSIDERATION

TIA argues that this Court should reconsider its decision to award fees "[b]ecause 28 U.S.C. § 1927 does not provide a basis for awarding fees against Petitioners and because Respondent has not asserted specific and accurate instances

of misconduct by Petitioners' counsel to support an award of fees against her, personally." (Doc. # 39, ¶ 10). The Court agrees that 28 U.S.C. § 1927 provides for an award of fees against an attorney rather than against a party. The Court disagrees, however, that TIA's attorney's ("Counsel") conduct does not support an award of fees.

Courts "have repeatedly expressed [] concern with the unnecessary burdens, both on the courts and on those who petition them, that result from unreasonable, irresponsible and vexatious conduct of attorneys as well as parties." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987). To minimize these burdens, federal courts are endowed with both inherent and statutory authority to award fees against an attorney whose litigation conduct is unreasonable. *Id*. "The power to assess costs, expenses, and attorney's fees against an attorney . . . is an essential tool to protect both litigants and the ability of the federal courts to decide cases expeditiously and fairly." *Id*. Therefore, "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

The purpose of § 1927, however, is not to "dampen the legitimate zeal of an attorney representing [her] client." *Braley*, 832 F. 2d at 1512. Rather, § 1927 serves as "an incentive for attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims." *Steinert v. Winn*, 440 F.3d 1214, 1224 (10th Cir., 2006); *see also Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1205 (10th Cir. 2008) ("[T]he text of § 1927, unlike that of Rule 11, indicates a purpose to compensate victims of

3

abusive litigation practices, not to deter and punish offenders."). Therefore, the "power to assess costs against an attorney under § 1927 . . . is a power that must be strictly construed." *Braley* 832 F.2d at 1512. Courts should sanction only that conduct which, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court[.]" *Hamilton*, 519 F.3d at 1202 (quoting *Braley*, 832 F.2d at 1512). An award under § 1927 is also appropriate when "an attorney acts recklessly or with indifference to the law; is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings is unwarranted." *Eberly v. Manning*, 258 F. App'x 224, 227 (10th Cir. 2007); *see also United States v. Lain*, 640 F.3d 1134, 1137 (10th Cir. 2011) ("vexatious" means "without reasonable or probable cause or excuse; harassing; annoying.") (quoting Black's Law Dictionary 1596 (8th ed. 2004)). Further, § 1927 sanctions may be awarded against attorneys who "repeatedly attempt to litigate matters that have been decided or who continue to pursue claims that are no longer reasonable." *Sangui Biotech Intern., Inc. v. Kappes*, 179 F. Supp. 2d 1240, 1243-44 (D. Colo. 2002). Applying this standard to the facts of this case, the Court concludes § 1927 sanctions are appropriate.

First, the Court finds that § 1927 sanctions are warranted because Counsel had no plausible basis to challenge the outcome of the arbitration. *Eberly* 258 F. App'x at 227. Counsel's motion to vacate the arbitration award was, in essence, an appeal of the arbitration award. Counsel argued that the arbitrator had made erroneous rulings on evidentiary matters, discovery disputes, and damages calculations, and it asked this Court to revisit those rulings. (*See* Doc. # 13, pp. 4-5). This Court, however, "does not sit

to hear claims of factual or legal error by an arbitrator as if it were an appellate court reviewing a lower court's decision." *Morrill v. G.A. Mktg., Inc.*, No. 04-cv-01744, 2006 WL 2038419, at *1 (D. Colo. July 18, 2006) (unpublished) (citing *United Paperworkers Intern. Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987)). Rather, this Court's ability to review an arbitration award is extremely limited. *See, e.g. ARW Expl. Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir.1995) ("[T]he standard of review of arbitral awards is among the narrowest known to law." (Quotation omitted)). "A court may only vacate an arbitration award for reasons enumerated in the Federal Arbitration Act" – *see* 9 U.S.C. § 10(a) – or for "a handful of judicially created reasons." *Denver & Rio Grande W. R. Co. v. Union Pac. R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997). Specifically, the Court can overturn an arbitration award only "(1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators . . . ; (3) where the arbitrators were guilty of misconduct . . . ; (4) where the arbitrators exceeded their powers," or where the arbitrator did not conduct a fundamentally fair hearing. 9 U.S.C. § 10(a); *Denver & Rio Grande W. R. Co.*, 119 F.3d at 849. None of these grounds were present in this case.

The Motion to Vacate failed to even allege, let alone prove, any of the grounds enumerated in the Federal Arbitration Act for overturning an arbitration award.[2] Rather, the Motion argued that TIA had been "deprived . . . of [its] due process rights" and "deprived of a fair hearing." (Doc. # 13, p. 15). These arguments were baseless: the

---

[2] Although TIA alleged "misconduct" by the arbitrator, the alleged "misconduct" was merely the arbitrator's decision to admit and give weight to some of Pope's evidence; there was no colorable claim of true misconduct. (Doc. # 13, pp. 12-13).

5

record demonstrates that TIA was afforded ample due process. TIA engaged in discovery, took depositions, and participated in a three-day arbitration where it introduced dozens of exhibits. (*See* Doc. # 29-1 (arbitration award summarizing procedural history)). TIA also proposed findings of facts and conclusions of law (Doc. # 2-6), and the parties submitted so much post-arbitration briefing that the arbitrator had to admonish them that it would "not consider any further motions and/or requests for clarification of the Final Award." (Doc. # 1-2 (emphasis in original)). Although TIA disagreed with the arbitrator's ultimate decision, it has failed to demonstrate any colorable basis for claiming that it was deprived of a fair hearing.

Further, Counsel's arguments for vacating the arbitration award run counter to the representations she made to Judge Kane earlier in this case. When she moved to compel arbitration, Counsel argued that this Court lacked jurisdiction to hear Pope's claims, that arbitration was mandatory, and that arbitration was the only forum for resolution of this dispute: "this Court lacks subject matter jurisdiction to adjudicate this matter as the parties have contractually agreed to use arbitration as the sole means for resolution of this matter." (Case 1:16-cv-02588-JLK, Doc. # 12 (emphasis added)). Counsel also argued that the parties were "bound" by the arbitration agreement in his employment contract; that they had a "contractual obligation" to arbitrate; and that the result of the arbitration would be "binding." (Case 1:16-cv-02588-JLK, Doc. # 12). "By agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31 (1991). In this case, TIA did not merely

agree to arbitration; it insisted upon it. Counsel's attempt to relitigate the case in this Court after insisting that this Court was not a proper forum was reckless and unreasonable. *See, e.g. Eastman v. Union Pacific R. Co.*, 493 F.3d 1151, 1156 (parties are prohibited from "deliberately changing positions according to the exigencies of the moment" in an attempt to gain a litigation advantage) (internal quotations omitted)); *see also Sangui Biotech Intern., Inc.* 179 F. Supp. 2d at 1243-44 (§ 1927 sanctions are appropriate against counsel who "repeatedly attempt to litigate matters that have been decided or who continue to pursue claims that are no longer reasonable.")

Furthermore, TIA's claims that the arbitration was unfair ring especially hollow because TIA *drafted* the arbitration agreement in question and chose both the rules and location of the arbitration. (Doc. # 5-1, section 5; Doc. # 13, p. 3 (noting that the arbitration agreement was "presented to Mr. Pope by [TIA]")). TIA had ample opportunity to impose whatever safeguards it believed were necessary to ensure a fair proceeding. Counsel's decision to argue that the arbitration was unfair, after her client chose the arbitration forum and selected the arbitration procedures, was unreasonable.[3]

Counsel now argues, however, that her conduct did not warrant an award of fees. "Sanctions against an attorney under 28 U.S.C. § 1927," she argues, "are extremely rare, penal, and extraordinary," and should be awarded only in exceptional circumstances. (Doc. # 49, p. 3). The Court disagrees. "The assessment of excess

---

[3] The Court does not mean to suggest that the party who drafted the arbitration or who moves to compel arbitration is per se barred from later moving to vacate the outcome of the arbitration. There are a number of circumstances which might entitle such a party to seek review of an arbitration award in federal court. Those circumstances are just not present in this case.

costs, expenses, or attorney's fees is a relatively mild sanction[.]" *Braley*, 832 F.2d at 1512. The purpose of § 1927 sanctions is not to punish counsel, but to compensate the adverse party for having to respond to vexatious arguments: "the text of § 1927, unlike that of Rule 11, indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders." *Hamilton*, 519 F.3d at 1205; *see also Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 872 (10th Cir. 2018) (§ 1927 "was designed to compensate victims of abusive litigation practices."). As discussed above, Counsel unreasonably and vexatiously multiplied these proceedings by asserting arguments that lacked legal basis, by making conflicting arguments about the binding nature of arbitration, and by attempting to relitigate issues that had already been fully and fairly resolved through arbitration – a forum that Counsel had insisted upon over Pope's objection. Pope – who had been willing to litigate in federal court in the first place – was then obliged to incur additional attorney fees defending the outcome of an arbitration that he had opposed in the first place. In fairness, Pope should be compensated for those fees.

Counsel next argues that "Attorney Gokenbach did not have notice that Pope sought to hold her personally liable for sanctions." (Doc. # 49, p. 5). The Court is not convinced. After devoting two paragraphs to Pope's request for § 1927 sanctions in her Reply to the Motion to Vacate, Counsel submitted an additional 23 pages of briefing dedicated almost exclusively to the issue of § 1927 sanctions. (Docs. ## 39, 49, 50). The Court has carefully reviewed Counsel's briefs and considered each of the

arguments asserted therein. The Court concludes that Counsel has had notice and ample opportunity to respond to Pope's request for fees.

Counsel also argues that § 1927 sanctions are not appropriate because counsel believed "she had a good faith basis for filing the Motion to Vacate the Arbitration Award." (Doc. # 49, p. 6). This argument is unavailing. "[Section] 1927 does not require a finding of bad faith." *Hamilton*, 519 F.3d at 1202. Rather, "[w]hen dealing with a lawyer, the courts 'are entitled to demand that an attorney exhibit some judgment.'" *B. Willis, C.P.A., Inc. v. Pub. Serv. Co. of Oklahoma*, 511 F. App'x 753, 756 (10th Cir. 2013) (quoting *Hamilton*, 519 F.3d at 1202). In this case, such judgment was lacking. Counsel first insisted on the necessity of arbitration, proclaiming unequivocally that arbitration was the "sole means" for resolving this dispute, before reversing course and demanding to be allowed to relitigate the case in federal court without a plausible basis. This conduct was unreasonable and warrants sanctions under § 1927.

**B.     POPE'S FEE REQUEST IS REASONABLE**

Having determined that an award of fees is appropriate, the Court must next determine an appropriate fee award.

When evaluating a motion for attorneys' fees, the Court follows the three-step process set forth in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987). The first step is to determine the number of hours reasonably spent by counsel for the prevailing party. *Malloy v. Monahan*, 73 F.3d 1012, 1017 (10th Cir. 1996); *Ramos*, 713 F.2d at 553. The factors considered in a reasonableness determination

include: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to a specific task. *Rocky Mountain Christian Church v. Bd. of Cty. Comm'rs of Boulder Cty.*, No. 06-cv-00554, 2010 WL 3703224, at *2–3 (D. Colo. Sept. 13, 2010).

Once the Court has determined the number of hours reasonably spent, it must then determine a reasonable hourly rate of compensation. *Ramos*, 713 F.2d at 555. "A reasonable rate is the prevailing market rate in the relevant community." *Malloy*, 73 F.3d at 1018 (citing *Blum v. Stenson*, 465 U.S. 885, 897 (1984)). The party seeking the award has the burden of persuading the court that the hours expended, and the hourly rate, are reasonable. *Id.*

The third step consists of multiplying the reasonable hourly rate by the number of hours reasonably expended to determine the "lodestar" amount. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[T]rial courts need not, and indeed should not, become green eye-shade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

The Court has reviewed Pope's attorney invoices, as well as the arguments for and against the requested fee, and it concludes that Pope's fee request is generally reasonable.

First, the Court finds that the amount of time Pope's attorneys spent on this matter was generally appropriate. Pope's attorneys spent a total of 62.8 hours doing work related to the Motion to Vacate and the Motion for Attorney Fees. (Docs. ## 40, 53). David Lichtenstein billed for 22.1 hours of work on these matters, and Matt Molinaro billed for 40.7 hours. This amount of time is not excessive in light of the detail, complexity, and length of the Motion to Vacate and the six separate briefs that were filed on the issue of attorney fees. However, TIA's counsel points out – and Pope's counsel does not dispute – that some of the time entries contained in Pope's fee summary include billing for administrative work and collateral matters. To address this issue, Pope proposes excluding these time entries from the fee request, reducing the total fee award by $1,179.00 from the total billed amount. The Court agrees that this reduction is appropriate. With this reduction in place, the Court concludes that the number of hours billed was not excessive.[4]

The Court next finds that the hourly rates charged by Pope's attorneys are reasonable. Pope requests a rate of $475 per hour for David Lichtenstein and $275 per hour for Matthew Molinaro.[5] This request is supported by the affidavit of Diane King, a seasoned Denver employment lawyer, who avers that these rates are consistent with billing standards for this type of work in the Denver market. (Doc. # 40-1). The Court

---

[4] The requested fee amount of $20,511.50 includes this proposed reduction.
[5] Mr. Molinaro billed at a rate of $275 per hour in 2019 and $325 per hour in 2020. TIA's counsel objected to the increased rate, but not to Mr. Molinaro's 2019 rate. In response to the objection, Mr. Molinaro reduced his fee request to exclude any amount billed in excess of $275 per hour.

finds that these rates are reasonable in light of counsel's experience, the complexity of the issues, and the prevailing rate for similar work in the Denver market.

Finally, multiplying the number of hours spent by the hourly rate charged, the Court reaches a lodestar fee amount of $21,690.00:

| Attorney | Hourly Rate | Hours Billed | Total Fee |
|---|---|---|---|
| David Lichtenstein | $475 | 22.1 | $10,497.50 |
| Matt Molinaro | $275 | 40.7 | $11,192.50 |
| **TOTAL** | | 62.8 | $21,690.00 |

Subtracting the agreed-upon reduction of $1,179.00 from this amount, the Court arrives at a total fee award of $20,511.00.[6] For the reasons discussed above, the Court finds that this is an appropriate fee for the work performed.

### III.   CONCLUSION

For the foregoing reasons, Petitioners' Motion for Reconsideration (Doc. # 39) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED to the extent it requests clarification as to whom the fee award applies, and the Court ORDERS that the award applies against Petitioners' Counsel Jennifer Gokenbach. The Motion is DENIED to the extent it seeks to vacate the attorney fee award against Petitioners' Counsel. Respondent's Motion for Attorney Fees (Doc. # 40) is GRANTED. It is

---

[6] This amount is $0.50 less than the requested fee. It is unclear where the difference arises, but the Court finds that this difference is not significant enough to request clarification from counsel regarding the fee requested, and that it is reasonable to award the lesser amount.

ORDERED that Respondent is awarded $20,511.00 as set forth in this Order. The Clerk shall enter judgment in favor of Ryan Pope and against Jennifer Gokenbach in the amount of $20,511.00.

DATED:  August 16, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge